**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

MUKHTAR MUSSA,

Plaintiff,

v.

HONEYWELL INTERNATIONAL, INC.,

Defendant.

Civil No. 24-2292 (JRT/JFD)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Stacey L. Sever, **SEVER LAW FIRM, LLC**, 7900 International Drive, Suite 300-7049, Bloomington, MN 55345, for Plaintiff.

Jody A. Ward-Rannow, Paola K. Maldonado, and Tyler Walter Hartney, I, **OGELTREE DEAKINS NASH SMOAK & STEWART PC**, 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402, for Defendant.

Mukhtar Mussa was terminated from his position at Honeywell International, Inc., ("Honeywell") in April 2024. He initiated this case in May 2024, alleging that Honeywell violated the Minnesota Whistleblower Act (MWA) and Minnesota Human Rights Act (MHRA) by engaging in retaliation, reprisal, and discrimination. Honeywell now moves for summary judgment. Because no disputes of material fact remain on essential aspects of each of Mussa's claims, the Court will grant summary judgment to Honeywell on each count and will dismiss Mussa's complaint in its entirety.

## BACKGROUND

### I. FACTS

Mussa is a Black man, born in Eritrea. (Decl. of Paola K. Maldonado ¶ 2, Ex. A ("Mussa Dep.") at 17:8–17, Jan. 5, 2026, Docket No. 35.) He began working for Honeywell in August 2013. (*Id.* at 37:9–12.) Mussa unsuccessfully applied for a group leader position at Honeywell in 2021, but was later promoted to a group leader position in late 2021 or early 2022. (*Id.* at 41:14–42:5.)

On April 21, 2023, two of Mussa's supervisors issued him a "Letter of Expectation" stating in part that he must "[b]ecome fully trained on all operations in the cell starting with the 1320 product line[.]" (*Id.* at 51:20–53:8; *see also* Second Decl. of Paola K. Maldonado ("Second Maldonado Decl.") ¶ 3, Ex. B (Letter of Expectation), Docket No. 39.) The letter also referenced previous "verbal and written conversations regarding . . . expectations of you as the Group Leader," and stated that Mussa "[hadn't] met the expectations we have previously discussed." (*Id.*) Mussa didn't think he should have to undergo additional training because other "group leaders [were] not required to know all the jobs" or "be an operator" on the assembly line. (Mussa Dep. at 50:10–17.) On August 18, 2023, Mussa received a second Letter of Expectations, requiring him to "[b]ecome fully trained on all operations on 1320 line" by a stated due date. (Second Maldonado Decl. ¶ 4, Ex. C, Docket No. 39.)

Mussa filed a grievance with his union, asserting that "learning the jobs in the CAP Cell is not [his] job duties as a CAP Cell Group Leader." (*Id.* ¶ 5, Ex. D.) He also stated that

the Letters of Expectation were issued "based on bias." (*Id.*) Honeywell responded to the grievance, explaining its concern that Mussa's lack of familiarity with the positions on the line were creating issues for the team he supervised. (*Id.* ¶ 6, Ex. E.) On December 4, 2023, the union informed Mussa that his grievance was denied. (*Id.* ¶ 7, Ex. F.)

On January 17, 2024, Honeywell sent Mussa a letter notifying him that he has "refused to take work direction from [his] supervisor, and this will not be tolerated." (*Id.* ¶ 9, Ex. H.) On February 9, 2024, Mussa received an additional "Letter of Expectation" reminding him of Honeywell's expectations and citing inappropriate behavior including refusing to schedule another Group Leader for overtime shifts "because you were upset with her," which had a "negative effect on production in the area." (*Id.*¶ 10, Ex. I.)

On April 3, 2024, Honeywell sent Mussa a "Termination Letter" stating:

> As you know, [Honeywell] has provided you several warnings around expectations to learn the 1320 product line. . . . While you have had ample time to complete this expectation it is yet outstanding. As a result, your employment is being terminated effective today, 4/3/2024, for unacceptable conduct in violation of . . . Honeywell's policies.

(*Id.* ¶ 11, Ex. J.)

## II. PROCEDURAL HISTORY

Mussa initiated this case in Minnesota state court, and on June 14, 2024, Honeywell removed it to federal court. (*See* Docket No. 1.) On January 5, 2026, Honeywell moved for summary judgment. (Def.'s Mot. Summ. J., Docket No. 32.) Mussa did not timely respond to the motion, and the Court issued an Order stating that it would

consider a response if filed by March 25, 2026. (*See* Order, Docket No. 43.) Mussa then filed his opposition memorandum on March 25, 2026. (*See* Pl.'s Mem. Opp., Mar. 25, 2026, Docket No. 44.)

The day after filing his memorandum, Mussa filed three affidavits which purport to be from former Honeywell employees. (Aff. of Darnell Williams, Docket No. 45; Aff. of Donny Lee, Docket No. 46; Aff. of Abdiwahab Mohamed Nur, Docket No. 48.) Honeywell objects to the Court's consideration of these affidavits under Federal Rules of Civil Procedure 26 and 37 because Mussa did not disclose the affiants as witnesses with knowledge of the subject matter covered by their affidavits.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. ANALYSIS

The Court will first consider Honeywell's objection to the Court's consideration of the late-filed affidavits. The Court will then consider each of Mussa's claims, in turn.

### A. Consideration of Supplemental Affidavits

Honeywell objects to the Court's consideration of the three affidavits contemporaneously filed by Mussa with his response to Honeywell's summary judgment motion. Honeywell argues that because Mussa violated the Federal Rules of Civil Procedure in failing to properly disclose each witness and the substance of their testimony, the affidavits should be excluded.

Federal Rule of Civil Procedure 26(a) requires parties to litigation to make initial disclosures of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." And Rule 26(e)(1) requires parties to "supplement or correct" its disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Federal Rule of Civil Procedure 37(c)(1), in turn, is the "default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F. 3d 698, 705 (8th Cir. 2018). Rule 37(c)(1) states, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."

Mussa previously disclosed one of the witnesses (Williams), albeit only for certain limited purposes; and Mussa did not disclose the other two affidavit providers (Lee and Nur) as potential witnesses. In short, Mussa did not comply with Rule 26. Nevertheless, the Court concludes that admitting the testimony is harmless in this case because Honeywell is entitled to summary judgment on all three counts of Mussa's Complaint even if the Court considers all three affidavits. The Court therefore will not exclude the supplemental affidavits.

The Court will now turn to Honeywell's motion for summary judgment and will consider each of Mussa's claims in turn.

### B. Count One: Minnesota Whistleblower Act—Retaliation

In Count One, Mussa brings a claim of retaliation under the MWA.[1] Minnesota statutes section 181.932 provides that "[a]n employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because . . . the employee . . . in good faith, reports a violation . . . of any federal or state law or common law . . . ." Minn. Stat. § 181.932, subd. 1(1). "Retaliation claims under the MWA . . . may be proven either by direct

[1] Claims of discriminatory practices under the MWA are preempted by the MHRA's exclusivity provision. *See Williams v. St. Paul Ramsey Med. Ctr.*, 551 N.W.2d 483, 486 (Minn. 1996). The Court therefore will not consider any potential reports of discrimination when ruling on Mussa's MWA claim and will instead only consider them under his MHRA claim.

evidence or, in the absence of such evidence, under the familiar *McDonnell-Douglas* burden-shifting framework." *Wood v. Satcom Marketing, LLC,* 705 F.3d 823, 828 (8th Cir. 2013).[2]

Mussa presents no direct evidence of retaliation. Thus, Mussa must establish a prima facie case of retaliation. *Id.* The elements of a prima facie case of retaliation under the MWA are "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983)). To establish the protected conduct prong, the plaintiff must show that he reported facts that, "if proven, would constitute a violation of law." *Abraham v. Cty. of Hennepin*, 639 N.W.2d 342, 355 (Minn. 2002).

Mussa has failed to identify any facts that would demonstrate that he engaged in protected conduct. To satisfy the first essential prong of a prima facie case of retaliation, Mussa must have "in good faith, report[ed] a violation, suspected violation, or planned

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) sets forth a three-part analysis. "At the first step of the framework, a plaintiff must establish a prima facie case of retaliation by showing (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action." *Wood,* 705 F.3d at 828. If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *Id.* If the defendant does so, the plaintiff may still prevail in the final step of the *McDonnell–Douglas* analysis by proving, by a preponderance of the evidence, that the legitimate, nonretaliatory reasons articulated by the employer were not the true reasons for discharge, but merely a pretext for retaliation. *Id.*

violation of any federal or state law . . . or rule adopted pursuant to law to an employer . . . ." Minn. Stat. § 181.932, subd. 1(a). "[T]he employee does not need to identify in the report the exact law that is violated, but the conduct reported must at least implicate a federal or state law." *Kratzer v. Welsh Companies, LLC*, 771 N.W.2d 14, 19 (Minn. 2009).

Mussa argues that he reported that his colleague, Ruby Vuong, engaged in unlawful conduct, and that this report constituted a protected action under the MWA. But Mussa's Complaint merely describes that he "reported issues with a second shift Group Leader, Ruby . . . whose conduct violated company policy . . . ." (Compl. ¶ 16.) Mussa does not identify any state or federal law or rule implicated by his colleague's reported conduct. It is true that an employee need not identify, in the report itself, a specific provision of law that has been violated—but Mussa's Complaint and legal memorandum in opposition to Honeywell's summary judgment motion also do not cite to any law which Vuong's conduct would have violated. Mussa, as the party opposing summary judgment "may not rest upon mere allegation or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "Without some guidance," the Court "will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006).

Because Mussa has failed to establish the first prong needed to establish a prima facie case of retaliation, the Court will grant Honeywell's motion for summary judgment with respect to Count One, Mussa's claim of retaliation under the MWA.

**C. Count Two: Minnesota Human Rights Act—Reprisal**

Under the MHRA, "[i]t is an unfair discriminatory practice for any . . . employer . . . to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under [the MHRA] . . . or participated in any manner in an investigation . . . under [the MHRA]." Minn. Stat. § 363A.15(a). "To survive a motion for summary judgment on a retaliation claim" under the MHRA, the plaintiff "must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016) (citation omitted); *see Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010) ("In construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act.").

Mussa presents no direct evidence of reprisal. Thus, Mussa must establish a prima facie case. "Under the MHRA, to establish a prima facie case for a reprisal claim, a plaintiff . . . must establish the following elements: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Bahr*, 788 N.W.2d at 81 (citation omitted). Once these elements are established, the burden shifts to the employer to articulate a legitimate, nonretaliatory

reason for the adverse action. *Wood,* 705 F.3d at 829. If the employer meets this burden the employee must then demonstrate that the proffered reason is pretextual. *Id.*

Even if the Court assumes that Mussa has stated a prima facie case of reprisal under the MHRA, the Court concludes that Honeywell has articulated a legitimate reason for Mussa's termination and that Mussa has failed to provide any evidence that this reason is pretextual. Honeywell has presented ample evidence that Mussa was terminated due to his failure to complete the 1320 line training. Mussa's superiors had first notified him he must complete this almost a year before his termination, and they consistently requested that he become trained on the 1320 line.

But Mussa has presented no evidence that this rationale is pretextual—indeed, Mussa's memorandum in opposition to Honeywell's summary judgment motion does not ever reference Mussa's burden to show that Honeywell's rationale is pretextual. Again, the Court emphasizes that a party may not merely rely on the Court to sift through all available record evidence to search for a dispute of material fact where the parties have not provided any argument on key elements of their claim. *Rodgers*, 435 F.3d at 908. The Court concludes that Mussa has failed to provide evidence that creates a factual dispute regarding whether Honeywell's legitimate reason for Mussa's termination was pretextual. The Court will therefore grant Honeywell's motion for summary judgment on Count Two, Mussa's claim of reprisal under the MHRA.

**D. Count Three: Minnesota Human Rights Act—Discrimination**

Count Three of Mussa's Complaint brings a claim of racial discrimination under the MHRA. The MHRA makes it "an unfair employment practice for an employer, because of race . . . to . . . discharge an employee[.]" Minn.Stat. § 363A.08, subd. 2. Like retaliation claims under the MHRA, racial discrimination claims may be proven either by direct evidence or, in the absence of such evidence, under the *McDonnell-Douglas* burden-shifting framework. "The same analysis applies to [racial discrimination claims under] both Title VII and [the] MHRA." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973–74 (8th Cir. 2012).

Mussa presents no direct evidence of racial discrimination. He must therefore state a prima facie case of racial discrimination. "To establish a prima facie case of discrimination under . . . the MHRA, [Mussa] must establish that (1) [he] is a member of a protected class, (2) [he] met [Honeywell's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Id.* at 973–74. If a plaintiff establishes a prima facie case, the employer bears the burden of proof to articulate a legitimate, non-discriminatory reason for undertaking the adverse action. *Id.* If the employer can articulate a legitimate purpose, the "ultimate burden" then falls on the plaintiff to produce evidence sufficient to create a genuine dispute of material fact regarding whether the nondiscriminatory rationale was mere pretext. *Id.*

The Court concludes that Mussa has failed to establish a prima facie case of discrimination because he has not adequately demonstrated circumstances giving rise to an inference of discrimination. A plaintiff can satisfy the fourth part of the prima facie case, the circumstances give rise to an inference of discrimination, in a variety of ways, "such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class . . . ." *Id.* at 974 (citation omitted). Mussa argues that the Lee, Nur, and Williams affidavits provide evidence of such similarly-situated employees, who are not Black, and who were treated more favorably by Honeywell. Specifically, the Lee affidavit states that other group leaders were not required to undergo the 1320 line training that Honeywell terminated Mussa for refusing to complete. (Lee Aff. ¶¶ 5–9.)

But "the test for determining whether employees are similarly situated to a plaintiff . . . is a rigorous one[.]" *McKey v. U.S. Bank Nat'l Ass'n.*, 978 F.3d 594, 600 (8th Cir. 2020). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012)). Mussa has presented no evidence that any non-Black employee dealt with his same supervisors, was subject to the same standards, and engaged in the same conduct—namely, being assigned to complete workplace training, and refusing to do so—but was not terminated. Mussa therefore has not satisfied part four of establishing a prima facie discrimination case of discrimination.

Honeywell is entitled to summary judgment on Count Three, Mussa's claim of racial discrimination under the MHRA.

**CONCLUSION**

Even taking all facts in the light most favorable to Mussa, the Court concludes that no genuine disputes of material fact remain regarding essential elements of each of Mussa's claims in this case. The Court will therefore grant Honeywell's motion for summary judgment in full.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Honeywell International, Inc.'s Motion for Summary Judgment (Docket No. [32]) is **GRANTED**.
2. Plaintiff Mukhtar Mussa's Complaint (Docket No. [1]) is **DISMISSED in its entirety and with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 26, 2026
at Minneapolis, Minnesota.

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge